We will hear argument this morning in Case 19-1392, Dobbs v. Jackson Women's Health Organization. General Stewart. Mr. Chief Justice, and may it please the Court. Roe v. Wade and Planned Parenthood v. Casey haunt our country. They have no basis in the Constitution. They have no home in our history or traditions. They've damaged the democratic process. They've poisoned the law. They've choked off compromise. For 50 years, they've kept this Court at the center of a political battle that it can never resolve. And 50 years on, they stand alone. Nowhere else does this Court recognize a right to end a human life. Consider this case. The Mississippi law here prohibits abortions after 15 weeks. The law includes robust exceptions for a woman's life and health. It leaves months to obtain an abortion. Yet the courts below struck the law down. It didn't matter that the law applies when an unborn child is undeniably human, when risks to women surge, and when the common abortion procedure is brutal. The lower courts held that because the law prohibits abortions before viability, it is unconstitutional no matter what. Roe and Casey's core holding, according to those courts, is that the people can protect an unborn girl's life when she just barely can survive outside the womb, but not any earlier when she needs a little more help. That is the world under Roe and Casey. That is not the world the Constitution promises. The Constitution places its trust in the people. On hard issue after hard issue, the people make this country work. Abortion is a hard issue. It demands the best from all of us, not a judgment by just a few of us. When an issue affects everyone, and when the Constitution does not take sides on it, it belongs to the people. Roe and Casey have failed, but the people, if given the chance, will succeed. This court should overrule Roe and Casey and uphold the state's law. I welcome the court's questions. General Stewart, you focus on the right to abortion, but our jurisprudence seems to focus on, in Casey, autonomy, in Roe, privacy. Does it make a difference that we focus on privacy or autonomy or, more specifically, on abortion? I think whichever one of those you're focusing on, Your Honor, particularly if you're focusing on the right to abortion, each of those starts to become a step removed from what's provided in the Constitution. Yes, the Constitution does protect certain aspects of privacy, of autonomy, and the like, but as this court said in Glucksburg, going directly from general concepts of autonomy, of privacy, of bodily integrity to a right is not how this court traditionally does due process analysis. So I think it just confirms, whichever one of those you look at, Your Honor, a right to abortion is not grounded in the text, and it's grounded on abstract concepts that this court has rejected in other contexts as supplying a substantive right. You say that this is the only constitutional right that involves the taking of a life. What difference does that make in your analysis? Sure, Your Honor. I think it makes a number of differences. I'd mention two in particular. One is it really does mark out the unbelievably profound ramifications of this area, which in many other areas, assisted suicide, a whole host of important areas that are important to dignity, autonomy, freedom, and important matters of conscience. It marks it out as one of the unique areas where this court has taken that important issue to the people, and it's something that implicates life, and it just, I think, marks off, Justice Thomas, how problematic and unusual and how much of a break the court's abortion jurisprudence is from those other cases. If we don't overrule Casey or Roe, do you have a standard that you propose other than the viability standard? It would be, Your Honor, a clarified version of the undue burden standard. I would emphasize, I think as Your Honor is alluding to, that no standard other than the rational basis review that applies to all laws will promote an administrable, workable, practicable, consistent jurisprudence that puts matters back with the people. I think anything heightened here is going to be problematic, but I would say if the court were not inclined to overrule Casey, the choice would be undue burden standard, untethered from any bright-line viability rule. Thank you. Go ahead. I'd like to go to a different topic, back to Casey. I assume you've read Casey pretty thoroughly. Yes, Your Honor. And there are two parts. One is they reaffirm Roe. Put that to the side. The second is an opinion for the court, not for three people, but for the court. And that second part is about what stare decisis principles should be used to overrule a case like Roe. And they say Roe is special. What's special about it? They say it's rare. They call it a watershed. Why? Because the country is divided. Because feelings run high. And yet the country, for better or for worse, decided to resolve their differences by this court laying down a constitutional principle, in this case women's choice. That's what makes it rare. That's not what I'm asking about. I want your reaction to what they said follows from that. What the court said follows from that is that it should be more unwilling to overrule a prior case. Far more unwilling we should be, whether that case is right or wrong, than the ordinary case. And why? Well, they have a lot of words there, but I'll give you about 10 or 20. There will be inevitable efforts to overturn it. Of course there will. Feelings run high. And it is particularly important to show what we do in overturning a case is grounded in principle and not social pressure, not political pressure. Only, quote, the most convincing justification can show that a later decision overruling, if that's what we did, was anything but a surrender to political pressures or new members. And that is an unjustified repudiation of principles on which the court stakes its authority. And then there are two sentences I'd like to read because they say they really mean this, the court, not just three. To overrule under fire in the absence of the most compelling reason to reexamine a watershed decision would subvert the court's legitimacy beyond any serious question. And the last sentence, after they quote Potter Stewart on the same point, they say overruling unnecessarily and under pressure would lead to condemnation, the court's loss of confidence in the judiciary, the ability of the court to exercise the judicial power and to function as the Supreme Court of a nation dedicated to the rule of law. Now, that's the opinion of the court, all right? And it's about stare decisis and how we approach it. And I hope everybody reads this. It's at 505 U.S. 854 to 869. All right. What do you say to that? Sure, Justice Breyer. I would say a couple things. I would say we have very closely gone through the factors that the Casey court itself went through in stare decisis. More than half of our brief is devoted to stare decisis. We now have 30 years in the wake of Casey to see what Casey has done and what it hasn't done. Some bad things in the eyes of some people and some good things in the eyes of some people. All right. Go ahead. I'm sorry, Your Honor. What I'd emphasize, Your Honor, is that to the extent that the – I would not say it was the people that called this court to end the controversy. The people, you know, many, many people vocally really just wanted to have the matter returned to them so that they could decide it, decide it locally, deal with it the way they thought best, and at least have a fighting chance to have their view prevail, which was not given to them under Roe and then as a result under Casey. And I'd also emphasize, Your Honor, that on stare decisis, just as I said, the last 30 years, workability, developments in the law, factual developments that states can't account for, the workability of the undue burden standard alone, many problems, on all the metrics that Casey was describing or the vast bulk of them, Casey fails. And I'd also emphasize this as well, Justice Breyer, that Casey was not a great example of simply letting precedent stand. It recast Roe's reasoning. It overruled two of the Court's most important abortion decisions. It jettisoned the trimester framework of Roe itself and adopted a new standard unknown to other parts of the law. Those are not the hallmarks of precedent, and they failed under this Court's stare decisis. Okay, can I take it that your answer is, yes, you accept the way, the special rule, the rule for the rare watershed, the stare decisis principles for deciding whether to overturn such a case as Roe. You accept that, and you think it's met. I would say, yes, in part, Justice Breyer. And here's what I'd emphasize, is that I do think, particularly when Casey looked outward and looked to what he saw as pressure, there was pressure on all sides. As Your Honor noted, this is a hot, difficult issue for everyone. That's why it belongs to the people. And I think the conclusion the Court drew from that, that it couldn't provide a good enough example, that it would look on principle, those conclusions were, with respect, Justice Breyer, mistaken. And the last 30 years has not seen any calming of that. It's been very different than some of the others, the Court's other controversial decisions that have seen much more calm. What hasn't been at issue in the last 30 years is the line that Casey drew of viability. There has been some difference of opinion with respect to undue burden, but the right of a woman to choose, the right to control her own body, has been clearly set for, since Casey, and never challenged. You want us to reject that line of viability and adopt something different. Fifteen Justices over 50 years have, or I should say 30 since Casey, have reaffirmed that basic viability line. Four have said no, two of them members of this Court, but 15 Justices have said yes, of varying political backgrounds. Now, the sponsors of this bill, the House bill in Mississippi, said we're doing it because we have new Justices. The newest ban that Mississippi has put in place, the six-week ban, the Senate sponsor said we're doing it because we have new Justices on the Supreme Court. Will this institution survive the stench that this creates in the public perception that the Constitution and its reading are just political acts? I don't see how it is possible. It's what Casey talked about when he talked about watershed decisions. Some of them, Brown v. Board of Education it mentioned, and this one, have such an entrenched set of expectations in our society that this is what the Court decided, this is what we will follow. That we won't be able to survive if people believe that everything, including New York v. Sullivan, I could name any other set of rights, including the Second Amendment by the way, there are many political people who believe the Court erred in seeing this as a personal right as opposed to a militia right. If people actually believe that it's all political, how will we survive? How will the Court survive? Justice Sotomayor, I think the concern about appearing political makes it absolutely imperative that the Court reach a decision well-grounded in the Constitution, in text, structure, history, and tradition, and that carefully goes through the stare decisis factors that we've laid out. Casey did that. No it didn't. Casey went through every one of them. You think it did it wrong. That's your belief. But Casey did that. And you haven't added much to the discussion in your papers as to the errors that Casey made, other than I disagree with Casey. Justice Sotomayor, maybe I can highlight two. Casey gave one paragraph to the workability of Roe. It then adopted the Undue Burden Standard, which is perhaps the most unworkable standard in American law. It gave about three paragraphs, if memory serves, to Reliance, which doesn't account for the last 30 years and the changes that have occurred since Casey. It gave a brief factual view to things that have changed since Roe. Those, of course, are not going to take account of the last 30 years of advancements in medicine, science, all of those things. What are the advancements in medicine? I think it's an advancement in knowledge and concern about such things as fetal pain, what we know the child is doing and looks like and is fully human from a very early... In regular cases, courts decide whether science fits the Daubert standard. Obviously, under the Daubert standard, the minority of people, the gross minority of doctors, who believe fetal pain exists before 24, 25 weeks, it's a huge minority, and one not well-founded in science at all. I don't see how that really adds anything to the discussion. That a small fringe of doctors believe that pain could be experienced before a cortex is formed, does it mean that there's been that much of a difference since Casey? We pointed out as an example, Your Honor, of where Roe and Casey improperly preclude states from taking account for these things. They should be able to be concerned about the fact of an unborn life being poked and then recoiling in the way one of us was recoiling. General, I know what it said about viability in Roe, but was viability an issue in the case? I know it wasn't briefed or argued. It was not an issue certainly the way it is an issue here, Your Honor. I think it was to the extent that the court had to reaffirm Roe, the way to read that as something other than dicta would be to understand... I'm sorry, I don't know what that said. Was it an issue in Roe? In Roe, yeah. I'm sorry, Your Honor. My understanding is no. The law there didn't have a viability tag. That was inserted by... In fact, if I remember correctly, and it's an unfortunate source, but it's there. In his papers, Justice Blackmun said that the viability line actually was dicta, and presumably he had some insight on the question. I think, and I'd add, Your Honor, Justice Blackmun, and I think as well as papers, pointed out the arbitrary nature of it and the line-drawing problems in it too. And then in Casey, Casey said that that was the core principle or central principle in Roe, viability. It said that after tossing out the trimester formula, which many people thought was the core principle. But was viability an issue in Casey? I don't think it was squarely an issue, Your Honor. Again, it's a little hard not to take the court at its word when it emphasized that viability is the central part of Roe's holding and saying that it is reaffirming that. So we kind of take that as it stands, but the court has not, it did not face a law like this, certainly, Mr. Chief Justice. May I finish my inquiry? Of course, Justice Sotomayor. Virtually every state defines a brain death as death. Yet the literature is filled with episodes of people who are completely and utterly brain-dreaded responding to stimuli. There's about 40% of dead people who, if you touch their feet, the foot will recoil. There are spontaneous acts by dead brain people. So I don't think that a response by a fetus necessarily proves that there's a sensation of pain or that there's consciousness. So I go back to my question of what has changed in science to show that the viability line is not a real line, that a fetus cannot survive? And I think that's what both courts below said, that you had no experts say that there is any viability before 23 to 24 months. And what I'd say is this, Justice Sotomayor, is that the fundamental problem with viability, it's not really something that rests on science so much. It's that viability is not tethered to anything in the Constitution, in history, or tradition. It's a quintessentially legislative line. A legislature could think that viability makes sense as a place to draw the line, but it's quite reasonable for a legislature to draw the line elsewhere. Counsel, there's so much that's not in the Constitution, including the fact that we have the last word, Marbury v. Madison. There is not anything in the Constitution that says that the Supreme Court is the last word on what the Constitution means. It's totally novel at that time, and yet what the court did was reason from the structure of the Constitution that that's what was intended. And here in Casey and in Rome, the court said there is inherent in our structure that there are certain personal decisions that belong to individuals and the states can't intrude on them. We've recognized them in terms of the religion parents will teach their children. We've recognized it in their ability to educate at home if they choose. They just have to educate them. We have recognized that sense of privacy in people's choices about whether to use contraception or not. We've recognized it in their right to choose who they're going to marry. I fear none of those things are written in the Constitution. They have all, like Marbury v. Madison, been discerned from the structure of the Constitution. Why do we now say that somehow Roe v. Casey are so unusual that they must be overturned? Well, Justice Sotomayor, I would emphasize two things. When you're going beyond the Constitution, this court has looked closely to— No, what I'm saying is they didn't go beyond the Constitution. Your Honor, they did not deduce those from the structure of the Constitution. They pointed to the 14th Amendment and reasoned that privacy in Roe, autonomy and similar values in Casey led to a right to abortion. That's not how this court traditionally does things, including in the vast run of cases that Your Honor ran through. The court looks to history and tradition, and here those decisively reject the proposition that states cannot legislate comprehensively on abortion before, after viability, and all throughout. So it's history and tradition, Your Honor. And I would also add, Your Honor, that those decisions, a great many of them draw, you know, not just draw from text history and tradition, but they draw often clear lines, very workable, have not led to the many negative stare decisis factors that we identify here. General Wood. Go ahead. Go ahead. Would a decision in your favor call any of the questions, any of the cases, sorry, that Justice Sotomayor is identifying into question? No, Your Honor. I think for a couple reasons. First of all, I think the vast run of those cases, and some mentioned from time to time, I think Griswold, Lawrence, Obergefell, these are cases that draw clear rules, can't ban contraception, can't ban intimate romantic relationships between consenting adults, can't ban marriage of people of the same sex, clear rules that have engendered strong reliance interests and that have not produced negative consequences or all the many other negative stare decisis considerations we've pointed out, Your Honor. Also, I'd add, none of them involve the purposeful termination of a human life. So those two features, stare decisis and termination of a human life, Your Honor, puts all of those safely out of reach of the court of rules here. Okay. So I'm sorry to interrupt again, but we really might be making progress. I mean, in the part that I read, you know, Casey? Yes, Your Honor. I think they think go back 150 years, maybe now we can go back 200. They think there have only been two cases, which were what they call the watershed and where the special tough overruling rules apply. You want this to be the third, or do you think there were more? And if so, what were they? Well, Your Honor, I think there's quite a bit of difference. I think the question is never, is it bad to overrule, period? I'm asking you to think. Think in their terms. There were two they mentioned. And they don't want Casey, they don't want Roe to be the third. Now, in your opinion, you just answered Justice Barrett, hey, all these are not rising to that level. Okay? Are there any that do rise to the level, in your opinion? I think, and I'm not sure that I necessarily agree with the watershed characterization, Your Honor. What I'd say, though, I can't think of another that kind of hits the radar. But I'd emphasize that a problem here is we're dealing with a right that doesn't have a basis in constitutional text. And, again, very much in conflict with those values, Justice Breyer. I'm not sure how your answer makes any sense. All of those other cases, Griswold, Lawrence, Obergefell, they all rely on substantive due process. You're saying there's no substantive due process in the Constitution. So they're just as wrong, according to your theater. No, Your Honor. We're quite comfortable with Washington v. Glucksberg and how it analyzes substantive due process. And it looks to text history, it looks to history and tradition, to discipline the inquiry. No, I mean, in Obergefell, there was no history of same-sex marriage. And I think the Court pointed out, look, when we were facing Loving v. Virginia. I'm not trying to argue that we should overturn those cases. I just think you're dissimilating when you say that any ruling here wouldn't have an effect on those. Respectfully, that's... Do you think that no state is going to think otherwise? That no people in the population aren't going to challenge those cases in court? I mean, Your Honor, we'll always have a diversity of views, but I think... That's the point. I think that's one of the benefits of our society. Isn't that the point? That there's a diversity of views and people can vigorously debate and make decisions themselves. Exactly, and that's what we're still doing, and that's what we're doing under undue burden, but we haven't been doing it on the viability line. And neither one has worked well. The viability line discounts and disregards state interests, and the undue burden standard has all of the problems that we have. Is your interest anything but a religious view? The issue of when life begins has been hotly debated by philosophers since the beginning of time. It's still debated in religions. So when you say this is the only right that takes away from the state the ability to protect the life, that's a religious view, isn't it? Because it assumes that a fetus is life at when? You're not drawing... When do you suggest we begin that way? Your Honor, I... Putting it aside from religion. I'll try to... I think there might be more than one question, and I'll do my very best, Justice Sotomayor. I think this Court in Gonzales pretty clearly recognized that before viability, we are talking with unborn life with a human organism. And I think the philosophical questions Your Honor mentioned, all those reasons that they're hard, they've been debated, they're important, those are all reasons to return this to the people, because the people should get to debate these hard issues. And this Court does not in that kind of a circumstance... enter the calculus. Meaning, right now, forcing women who are poor, and that's 75% of the population, and much higher percentage of those women in Mississippi, who elect abortions before viability, they are put at a tremendously greater risk of medical complications and ending their life. Fourteen times greater to give birth to a child full term than it is to have an abortion before viability. And now the state is saying to these women, we can choose not only to physically complicate your existence, put you at medical risk, make you poorer by the choice, because we believe what? Sure, Your Honor. I think to answer, I think, the question I think you led with, and then I think it expanded on, but it's still on the same issue is, as to when does a woman's interest enter, as far as we're concerned, if they're the entire time. Our point is that all of the interests are there the entire time, and Roe and Casey improperly prevent states from taking account and weighing those interests however they think best. Are there secular philosophers and bioethicists who take the position that the rights of personhood begin at conception, or at some point other than viability? I believe so. I mean, I think there's a wide array, I mean, of people of kind of all different views and of no faith views who would reasonably have that view, Your Honor. It's not tied to a religious view, and I don't think were it otherwise, this Court's jurisprudence would, on this issue, would run right into some of its religious exercise jurisprudence. General, Justice Breyer started with stare decisis, an important principle in any case, and here, for the reasons that Casey mentioned, especially so to prevent people from thinking that this Court is a political institution that will go back and forth depending on what part of the public yells loudest and preventing people from thinking that the Court will go back and forth depending on changes to the Court's membership. And what strikes me about this case, and you come here very honestly saying, you know, we want you to discard the entire setup, and then even if you don't do that, we want you to discard the viability line, which you've acknowledged again today, Casey says, is the heart, the central principle of Roe. And so usually there has to be a justification, a strong justification in a case like this beyond the fact that you think the case is wrong. And I guess what strikes me when I look at this case is that, you know, not much has changed since Roe and Casey, that people think it's right or wrong based on the things that they have always thought it was right and wrong for. So the rationale behind those cases has something to do with the autonomy and the freedom and the dignity of women to pursue their lives as they wish, to protect their bodily integrity, to make the decisions that are most fundamental to the course of their lives. And always in those cases there was an understanding that there were important interests on the other side in protecting life or protecting the potential for life, whether people saw it one way or the other way, and that there was a difficult question here and a balance to be made. And, I mean, it strikes me that people, some people think those decisions made the right balance and some people thought they made the wrong balance, but in the end we are in the same exact place as we were then. Except that we're not, because there's been 50 years of water under the bridge, 50 years of decisions, saying that this is part of our law, that this is part of the fabric of women's existence in this country, and that that places us in an entirely different situation than if you had come in 50 years ago and made the same arguments. So I guess I just wanted to hear you react to that. Of course, Justice Kagan, thank you. I would emphasize a couple things, Your Honor. The fact that so much time has passed, let's say nothing had changed. That's not a point in Roe and Casey's paper. They have no basis in the Constitution. They adopt a right that purposefully leads to the termination of now millions of human lives. If nothing had changed, they'd be just as bad as they were 30 years ago, 50 years ago, and now we just have decades of damage and we have a situation where nearly 30 years after Casey, the Court unfortunately divides over what Casey, the lead case in the abortion area, even means. The lower courts are left not knowing what to do, and I think kind of a fundamental problem here is I think as Justice Gorsuch mentioned, emphasized in his opinion in June Medical, that the problem for lower court judges is the Constitution doesn't give them an answer to this. There's no neutral rule of law, so judges unfortunately have to look within themselves and that's just never going to solve this issue. But if the matters return to the people, the people can deal with it, they can work, they can compromise and reach different solutions. But if we don't do that, we're just going to have all this sort of damage and at some point it's appropriate for the court to say enough, as it has in some of the great overrulings in Brown and in other cases where it said this is just enough. Justice Harlan had it right in dissent in Plessy when he recognized that all are equal and similarly here the state should be able to recognize, hey, there are real values on both sides here. We think that this one slightly outweighs, we think that this one slightly outweighs, or we think that there's some balance to be drawn here. But if the court doesn't do that, Justice Kagan, it's just going to be continued damage and the court will continue to plunge in this political issue. I apologize, Mr. Chief Justice, I've gone on. Well, that's all right. I have just a few little, well, not little, I hope, questions. And first gets back to the issue of viability. You know, in your petition for cert, your first question and the only one on which we granted review was whether all pre-viability prohibitions on elective abortions are unconstitutional. And then I think it's fair to say that when you got to the brief on the merits, you kind of shifted gears and talked a lot more about whether or not Roe and Casey should be overruled. And I wanted to give you a chance to explain that. Sure, Your Honor. So a couple points. You know, at the petition stage we were of course identifying, we'd identified for the court three questions. We emphasized, as you do at the cert stage, hey, this is important, only this court can resolve it. We emphasized, I believe it was five times, that the court was at the least going to need to reconsider, revisit, or reevaluate its precedents. And we asked the court to at least get rid of a viability line or any suggestion of a viability line. So we added, however, and we had to take account of the reality that this argument has not fared well in the lower courts. It's lost in every court of appeals. So we raised the issue in addition. But once the court granted only the first question, we presented every argument as we signaled we would present the full-blown constitutional merits argument with that fundamental question. So I'd emphasize that, Your Honor. It was kind of the shifty-go from cert stage to merits stage. The court granted one question. That question fairly includes what is the correct answer. Well, it fairly includes the broader arguments you raised. I'm not suggesting that. But on the other hand, it presumably included the viability question as well, because that's what you talked about in that one sentence. And we've addressed that as well, Your Honor. What I'd emphasize here is that the merits arguments of the validity of Roe and Casey as an original matter, is there a viability rule based on the Constitution? Those are not that complicated or lengthy. The harder questions are should the court overrule and take that momentous step? And that's why we devote a lot of space to that very important issue. We respect stare decisis and have walked through all those points. But again, focusing on the question presented and presenting our best arguments for that, that's what we've done, Mr. Chief Justice. On stare decisis, I think the first issue you look at is whether or not the decision at issue was wrongly decided. I've actually never quite understood how you evaluate that. Is it wrongly decided based on the legal principles and doctrine when it was decided or in retrospect? Because Roe, there are a lot of cases around the time of Roe, not of that magnitude, but the same type of analysis, that went through exactly the sorts of things we today would say were erroneous. But do we look at it from today's... If we look at it from today's expected, it's going to be a long list of cases that we're going to say were wrongly decided. Well, I'd say, Mr. Chief Justice, that you can look both, was it wrong at the time? Has it been unmasked as wrong by new understandings, new knowledge, any developments? But I don't think, as I think my colloquy with Justice Barrett indicated, the court won't have to be looking at many other areas because this is an area that has a uniquely problematic set of stare decisis considerations. A lot of other controversial areas or once-controversial areas are quite settled, clear rules, and don't have those considerations against them. So really, by overruling Roe and Casey, the court won't have to go down that road, and a lot of those decisions are quite readily roundable in history, tradition, and, of course, traditional factors, Your Honor. Thank you. Justice Thomas? Justice Breyer? Salido? Justice Sotomayor? Kaye? Justice? I just wanted to get your quick sense of how your intermediate positions would work. You know, if basically the viability line was discarded and undue burden became the standard overall, a standard that, according to you, is an unclear one, what that would leave the court with going forward. You know, I'm just sort of thinking about the great variety of regulations that states could pass. So whether one is 15 weeks and one is 12 weeks and one is nine weeks, or variation across a wide variety of other dimensions, what would that look like coming to the court? How do you think we would be able to deal with that, or how would you counsel us to deal with that if the court were to go down that road? Well, I think this is not to push back against the end, and I will answer your question, Justice Kagan, but part of why we counsel to overrule full scale is that that's the only way to get rid of a number of the problems that I think Your Honor is alluding to, and that's that when you have the undue burden standard, it's a very hard standard to apply. It's not objective. The court looks to the record in each case and what's going on. I mean, the court in Casey itself said, under this record, this is not an undue burden. You couldn't say necessarily for certain that a certain number of weeks one place would be an undue burden but would be okay another place. But again, that is the world we have under Casey. So if the court upholds this law under the undue burden standard, it would be carrying forward those features, and I hope I've answered your question, but I think that's one of the very strong reasons to just go all the way and overrule Roe and Casey, Your Honor. Justice Gorsuch? Justice Kavanaugh? I want to be clear about what you're arguing and not arguing, and to be clear, you're not arguing that the court somehow has the authority to itself prohibit abortion or that this court has the authority to order the states to prohibit abortion, as I understand it, correct? Correct, Your Honor. As I understand it, you're arguing that the Constitution is silent and therefore neutral on the question of abortion. In other words, that the Constitution is neither pro-life nor pro-choice on the question of abortion but leaves the issue for the people of the states or perhaps Congress to resolve in the democratic process. Is that accurate? We're saying it's left to the people, Your Honor. And so if you were to prevail, the states, the majority of states, or states still could and presumably would continue to freely allow abortion, many states, some states would be able to do that even if you prevail under your view. Is that correct? That's consistent with our view, Your Honor. It's one that allows all interests to have full voice, and many of the abortions we see in certain states that I don't think anybody would think would be moving to change their laws in a more restrictive direction. Thank you. Thank you, Your Honor. Justice Barrett? General, I have a question that is a little bit of a follow-up to one that Justice Breyer was asking you. That's about stare decisis, and I think a lot of the call we've had with all of us has been about the benefits of stare decisis, which I don't think anyone disputes. And, of course, no one can dispute because it's part of our stare decisis doctrine that it's not an inexorable command and that there are some circumstances in which overruling is possible. You know, we have Plessy-Brown, we have Bowers v. Hardwick to Lawrence. But in thinking about stare decisis, which is obviously the core of this case, how should we be thinking about it? I mean, Justice Breyer pointed out that in Casey, and in some respects, well, it was, a different conception of stare decisis than so far as it very explicitly took into account public reaction. Is that a factor that you accept, or are you arguing that we should minimize that factor? And is there a different set of rules? It is true that Casey identified Brown and West Coast Hotel as watershed decisions, but is there a distinct set of stare decisis considerations applicable to what the court might decide as a watershed decision? I don't think there should be a distinct set of considerations there, Your Honor. I think what I emphasize, and just to make sure, on the kind of legitimacy, the court looking outward, I think Casey was unusual in that regard. I think it was a mistake, and I think it's something that is kind of in conflict with this court's structure and approach as an independent branch looking to the Constitution rather than looking without. And I think that's one reason why traditionally the court is, in some of its greatest overrulings, it's not looking without. It's saying this was wrong. It was wrong the day it was decided. We know it's wrong today, and it's led to all these terrible consequences. We should get rid of it. So I think that that was an unfortunate break, and I think the court, even if the court were to still look at legitimacy, though, Justice Barrett, I think the court could very, very powerfully say, Look, our legitimacy really derives from our willingness to stand strong and stand firm in the face of whatever is going on and stand for constitutional principle and follow our traditional stare decisis factors to overrule when it's appropriate. Thank you, Your Honor. Thank you, Counsel. Thank you, Mr. Chief Justice. Ms. Rickleman. Mr. Chief Justice, and may it please the court, Mississippi's ban on abortion two months before viability is flatly unconstitutional under decades of precedent. Mississippi asks the court to dismantle this precedent and allow states to force women to remain pregnant and give birth against their will. The court should refuse to do so for at least three reasons. First, stare decisis presents an especially high bar here. In Casey, this court carefully examined and rejected every possible reason for overruling Roe, holding that a woman's right to end a pregnancy before viability was a rule of law and a component of liberty it could not renounce. The question, then, is not whether Roe should be overturned, but whether Casey was egregiously wrong to adhere to Roe's central holding. Second, Casey and Roe were correct. For a state to take control of a woman's body and demand that she go through pregnancy and childbirth with all the physical risks and life-altering consequences that brings is a fundamental deprivation of her liberty. Preserving a woman's right to make this decision until viability protects her liberty while logically balancing the other interests at stake. Third, eliminating or reducing the right to abortion will propel women backwards. Two generations have now relied on this right, and one out of every four women makes the decision to end a pregnancy. Mississippi's ban would particularly hurt women with a major health or life change during the course of a pregnancy. Poor women, who are twice as likely to be delayed in accessing care, and young people, or those in contraception, who take longer to recognize a pregnancy. To avoid profound damage to women's liberty, equality, and the rule of law, the Court should affirm. Counsel, I just have one question. I assume you, from your brief, you're relying on an autonomy theory. Both bodily integrity and the ability to make decisions related to family, marriage, and childbearing, Your Honor. Shortly, some years after we decided Casey, we had a case out of South Carolina, I believe, involved a woman who had been convicted of criminal child neglect because she ingested cocaine during pregnancy. And her case was post-viability, so it doesn't fit in the facts of this case. If she had ingested cocaine pre-viability and had the same negative consequences to her child, do you think the state had an interest in enforcing that law against her? The state may have, Your Honor. The state can certainly regulate to serve its interests in fetal life and in women's health. Those particular laws tend to undermine both of those interests because they deter women from seeking prenatal care, which is counterproductive to both their health. But pre-viability as well as post-viability? No, Your Honor. The court has been clear that after viability, states can prohibit abortion except to say... No, I mean in my example of criminal child neglect. I understand your argument is about abortion. I am trying to look at the issue of bodily autonomy and whether or not she has a right also to bodily autonomy in the case of ingesting an illegal substance and causing harm to a pre-viability fetus. Your Honor, of course those issues aren't posed in this case. And again, I would say that the states can certainly regulate throughout pregnancy, both before and after viability, to preserve fetal life and to preserve the woman's health. The court has said, however, there are other constitutional issues at stake. For instance, in the Ferguson case, that states still can't violate women's Fourth Amendment rights. But again, that's not what this case is about. This case is about a ban on abortion that the state concedes is weeks before viability. And the court has been clear for 50 years that the one thing that states cannot do is to take the decision completely away from the woman until viability. But until that point, it is her decision to make, given the unique physical demands of pregnancy and the life-altering consequences of pregnancy and having a child. Thank you. The point you made about the impact on women and their place in society, those were certainly made in Roe as well. What we have before us, though, is a 15-week standard. Are you suggesting that the difference between 15 weeks and viability are going to have the same sort of impacts as you were talking about or as we were talking about in Roe? Yes, Your Honor. I believe they would because people who need abortion after 15 weeks are often in the most challenging circumstances. As I mentioned, there are people who have perhaps had a major health or life change, a family illness, a job loss, a separation, young people or people who are on contraception or pregnant for the first time and who are delayed in recognizing the signs of pregnancy, or poor women who often have much more trouble navigating access to care. And if they're denied the ability to make this decision because there's a ban after 15 weeks, they will suffer all of the consequences that the court has talked about in the past. And, in fact, the data has been very clear over the last 50 years that abortion has been critical to women's equal participation in society. It's been critical to their health, to their lives, their ability to proceed. I'm sorry, what kind of data is that? I would refer the court to the brief of the economist in this case, Your Honor, and it compiles data showing studies based actually on causal inference showing that it's the legalization of abortion and not other changes that have had these benefits for women in society. And, again, those benefits are clear for education, for the ability to pursue a profession, for the ability to have... Well, putting that data aside, if you think that the issue is one of choice, that women should have a choice to terminate their pregnancy, that supposes that there is a point at which they've had the fair choice, an opportunity to choice, and why would 15 weeks be an inappropriate line? So if viability, it seems to me, doesn't have anything to do with choice, but if it really is an issue about choice, why is 15 weeks not enough time? For a few reasons, Your Honor. First, the state has conceded that some women will not be able to obtain an abortion before 15 weeks, and this law will bar them from doing so, and a reasonable possibility standard would be completely unworkable for the courts. It would be both less principled and less workable than viability, and some of the reasons for that are, without viability, there will be no stopping point. States will rush to ban abortion at virtually any point in pregnancy. Mississippi itself has a six-week ban, but it's defending with very similar arguments as it's using to defend the 15-week ban, and there are states that have banned... Well, I know, but I'd like to focus on the 15-week ban, because that's not a dramatic departure from viability. It is the standard that the vast majority of other countries have. When you get to the viability standard, we share that standard with the People's Republic of China and North Korea, and I don't think you have to be in favor of looking to international law to set our constitutional standards to be concerned if those are your... share that particular time period. I think there's two questions there, Your Honor, if I may. First, that is not correct about international law. In fact, the majority of countries that permit legal access to abortion allow access right up until viability, even if they have nominal lines earlier. So, for example, Canada, Great Britain, and most of Europe allows access to abortion right up until viability, and it also doesn't have the same barriers in place. What do you mean, even if they have nominal lines earlier? Some countries, Your Honor, have a nominal line of 12 weeks or 18 weeks, but they permit legal access to abortion after that point for broad social reasons, health reasons, socioeconomic reasons, so their regimes really aren't comparable, and they also don't have the same types of barriers that we have here. So if the court were to move the line substantially backwards, and 15 weeks is nine weeks before viability, Your Honor, it's quite a bit backwards. It may need to reconsider the rules around regulations  that those barriers are going to be much more important. Thank you. Ms. Rickleman, I have a question about the safe haven laws. So Petitioner points out that in all 50 states you can terminate parental rights by relinquishing a child after abortion, and I think the shortest period might have been 48 hours, if I'm remembering the data correctly. So it seems to me, seen in that light, both Roe and Casey emphasize the burdens of parenting. And insofar as you and many of your amici focus on the ways in which forced parenting, forced motherhood, would hinder women's access to the workplace and to equal opportunities, it's also focused on the consequences of parenting and the obligations of motherhood that flow from pregnancy. Why don't the safe haven laws take care of that problem? It seems to me that it focuses the burden much more narrowly. There is, without question, an infringement on bodily autonomy, which we have in other contexts like vaccines. However, it doesn't seem to me to follow that pregnancy and then parenthood are all part of the same burden. And so it seems to me that the choice, more focused, would be between, say, the ability to get an abortion at 23 weeks or the state requiring the woman to go 15, 16 weeks more and then terminate parental rights at the conclusion. Why didn't you address the safe haven laws and why don't they matter? I think they don't matter for a couple of reasons, Your Honor. First, even if some of those laws are new since Casey, the idea that a woman could place a child up for adoption has, of course, been true since Roe. So it's a consideration that the court already had before it when it decided those cases and adhered to the viability line. But in addition, we don't just focus on the burdens of parenting and neither did Roe and Casey. Instead, pregnancy itself is unique. It imposes unique physical demands and risks on women and, in fact, has impact on all of their lives, on their ability to care for other children, other family members, on their ability to work. And in particular, in Mississippi, those risks are alarmingly high. It's 75 times more dangerous to give birth in Mississippi than it is to have a pre-viability abortion, and those risks are disproportionately threatening the lives of women of color. So are you saying, I mean, actually, as I read Roe and Casey, they don't talk very much about adoption. It's a passing reference. That means out of the obligations of parenthood. But as I hear this answer, then, are you saying that the right, as you conceive of it, is grounded primarily in the bearing of the child and the caring of pregnancy and not so much looking forward into the consequences on professional opportunities and work life and economic burdens? No, Your Honor. I believe it's both, and that is exactly how Casey talked about it. It talked about the two strands of cases that supported the right. One was the strand of cases supporting bodily integrity, and it cited two cases like Cruzan and Riggins v. Nevada, and the second was the strand of cases supporting decisional autonomy and specifically decisions related to childbearing, marriage, and procreation decisions like Griswold and Loving. And so it's really both strands that we're relying on here. May I ask you a question about stare decisis, counsel? Your colleagues on the other side have emphasized that Casey rejected Roe's trimester framework and replaced it with an undue burden standard. They argue that the undue burden standard was not well known to the law before that, and then they argue that the undue burden standard has evolved over time, too, in ways the court has found difficult to agree upon. In Hellerstadt, for example, they point out in their briefs that the court seemed to suggest that a court should consider both the benefits and the burdens associated with the proposed restriction. In June medical, more recently, the court splintered on that same question, whether benefits could be considered or only burdens. And so the argument goes that this has proved to be, putting aside all the other obviously difficult questions in the case, that the standard itself has proved difficult to administer and that that is relevant to the stare decisis analysis. And I just wanted to give you an opportunity to respond. Yes, Your Honor. The first point I'd like to make is the undue burden test is not at issue in this case. That is the test that applies to regulations, not prohibitions, and the state has conceded that this is a prohibition. In fact, that's the title of this law, is an act to prohibit abortion after 50 weeks. And the only thing that's at issue in this case is the viability line, and the viability line has been enduringly workable. The lower federal courts have applied it consistently and uniformly for 50 years, and the Fifth Circuit here below had no difficulty striking down this law unanimously, 3-0. So it's been an exceedingly workable standard. And if I may return to your question, Mr. Chief Justice, a reasonable possibility standard would not be workable. It would ultimately boil down to an argument that states can prohibit a category of women from exercising the constitutional right merely because of the number of people in the category, and that's just not how constitutional rights work. A state would never say that it could ban religious services on a Wednesday evening, for example, simply because most people could attend religious services on another night of the week. So I actually just wanted to – that's helpful, I think. I just want to make sure I understand what you're telling me, counsel, that if the court were to, in this case, step past viability and apply the undue burden test to regulations prior to viability, you would agree with the other side, I think, that that's not a workable standard. Is that a fair understanding of what you're telling the court? No, Your Honor. You think that would be workable? I believe, if I may clarify, I believe the undue burden test has been workable for regulations. I understand that. If it were to apply, if the court were to – and I thought this is what you were saying in response to the Chief Justice, but maybe I'm mistaken. Please correct me if I am. What is your argument against applying the undue burden standard prior to viability? It's the undue burden standard, as this Court laid out in Casey, which includes the viability line. No, no, I'm asking – we're fighting the hypothetical here, counsel, right? Except the hypothetical. Hypothetically, the court were to extend the undue burden standard to regulations prior to viability. Would that be workable or would that not be workable, in your view? Without viability, it would not be workable, Your Honor, because it would ultimately, again, always come down to a claim that states can bar a certain category of people from exercising this right simply because of the number of people in the category. And that's not a workable standard and it's not a constitutional standard. I appreciate that clarification. Thank you. Just to follow up on that, I read your brief to say that the only real options we have are to reaffirm Roe and Casey as they stand or to overrule them in their entirety. You say that, quote, there are no half measures here. Is that a correct understanding of your brief? Your Honor, it's certainly the arguments that the state has presented is what we're responding to there, which is that all of the state's arguments, including their alternatives, which are undue burden without viability, would be the equivalent of overruling Casey and Roe because the viability line is the central holding of those cases. Casey mentioned it no fewer than 19 times, and the court in June medical just a year ago affirmed that the viability line is the central holding of both Casey and Roe. You do emphasize that the court drew the line at viability in Roe and reaffirmed that in Casey, and that is certainly something that we have to take very seriously into consideration. But suppose we were considering that question now for the first time. I'm sure you know the arguments about the viability line as well as I do, probably better than I do. What would you say in defense of that line? What would you say to the argument that has been made many times by people who are pro-choice and pro-life that the line really doesn't make any sense, that it is, as Justice Blackmun himself described it, arbitrary? If a woman wants to be free of the burdens of pregnancy, that interest does not disappear the moment the viability line is crossed. Isn't that right? No, Your Honor, and if I may make a few points to answer your question. First, I think the state views viability as arbitrary because it completely discounts the woman's interest. No, no, but does a woman have, upon reaching the point of viability, does not the woman have the same interest that she had before viability in being free of this pregnancy that she no longer wants to continue? Viability is a principled line, Your Honor, because in ordering the interest... Well, I'm trying to see whether it is a principled line. You agree with me at least on that point, that a woman still has the same interest in terminating her pregnancy after the viability line has been crossed. Yes, Your Honor, but the court balanced the interest in ordering the interest of the state. Okay, then look at the interest on the other side. The fetus has an interest in having a life, and that doesn't change, does it, from the point before viability to the point after viability? In some people's view, it doesn't, Your Honor, but what the court said is that those philosophical differences can be resolved in a way... That's what I'm getting at. What is the philosophical argument, the secular philosophical argument for saying this is the appropriate line? There are those who say that the rights of personhood should be considered to have taken hold at a point when the fetus acquires certain independent characteristics, but viability is dependent on medical technology and medical practice. It has changed. It may continue to change. No, Your Honor, it is principled because in ordering the interest at stake, the court had to set a line between conception and birth, and it logically looked at the fetus's ability to survive separately as a legal line because it's objectively verifiable and doesn't require the court to resolve the philosophical issues at stake. I just want to focus on stare decisis for a little bit. I found my colleague Justice Breyer's comments quite compelling. I'm not quite sure how they play out in Casey. It is certainly true that we cannot base our decisions on whether they're popular or not with the people. Casey seemed to say we shouldn't base our decisions not only on that, but whether they're going to seem popular. And it seemed to me to have a paradoxical conclusion that the more unpopular the decisions are, the firmer the court should be in not departing from prior precedent. It's sort of a superstare decisis. But it's superstare decisis for what are regarded by many as the most erroneous decisions. Do you think there is that category, or is it just normal stare decisis? I think it is precedent on precedent, Your Honor, because Casey did the stare decisis analysis for Rose. So the question before this court is whether that stare decisis analysis was egregiously wrong. And if I may answer your earlier question about whether viability was squarely at issue in Casey, it clearly was, Your Honor. At pages 869 to 871, the court squarely addressed viability because the government had made the argument that viability was arbitrary. I appreciate that Casey addressed it, but that's different than saying it was at issue. It said it was the central principle of Rose because it was pretty much all that was left after they were done dealing with the rest of it. And the regulations in Casey had no applicability or not depending upon where viability was. They applied throughout the whole range, period. So they didn't say anything about viability. It's like what Justice Blackmun said when discussing among his colleagues, which is a good reason not to have papers out that early, is that they don't have to address the line drawing at all in Rose. And they didn't have to address the line drawing at all in Casey. I disagree with that, Your Honor, because the undue burden test incorporates the viability line. That was what the court was assessing the regulations against, whether they imposed a substantial obstacle in the path of a woman before viability. And if a prohibition like this law isn't a substantial obstacle, then nothing would be. So the issue was squarely before the court. And, in fact, the court said at page 879 that in adopting the undue burden test, it was not disturbing the viability line. It's a very interesting question that I think Justice Barrett raised too. It's usually just philosophical, but I think it has bite here. When I read Casey, it's not just one-on-one, you know, two is greater than one. Casey plus Roe is greater than. They're making a point that we're an institution perhaps more than a court of appeals or a district court. It's Hamilton's point. No purse. No sword. And yet we have to have public support. And that comes primarily, says Casey. I wonder if it was O'Connor who wrote that. I don't know. But it comes primarily from people believing that. We do our job. We use reason. We don't look to just what's popular. And that's where you see the paradox. But the problem with the super case of which we've heard three mentioned, the problem with the super case like this, the rare case, the watershed case, where people are really opposed on both sides, and they really fight each other, is they're going to be ready to say, no, you're just political. You're just politicians. And that's what kills us as an American institution. That's what they're saying. So we're looking at it for that. But we are looking to. And that, they say, is a reason why. A reason why. When you get a case like that, you better be damn sure that the normal sorry considerations, sorry to slice this overruling, are really there in spades. Double, triple, quadruple. And then they go through and show they're not. Okay? What's the paradox? Maybe you think I just made an argument that there isn't one. But really, in my head, I'm thinking I'm not sure. There may be one. And I don't know if you've ever thought about this. I don't know if you've ever, when that occurred to you. I don't want to overrule the sorry. I wouldn't want the court to overrule the sorry to slice this section of Casey. That's what I think is being brought up. Maybe I haven't made it clearer, but I've tried to. Yes, Your Honor. I think the point that the court was making was that the fact that some states may continue to enact laws in the teeth of the court's precedent has never been enough of a reason to overrule. And that's true for a number of decisions that the court has issued. The fact that some people continue to disagree with them is not a basis to discard that precedent. Justice Thomas, anything further? Back to my original question. I know your interest here is in abortion. I understand that. But if I were to ask you what constitutional right protects the right to abortion, is it privacy? Is it autonomy? What would it be? It's liberty, Your Honor. It's the textual protection in the 14th Amendment that a state can't deprive a person of liberty without due process of law. And the court has interpreted liberty to include the right to make family decisions and the right to physical autonomy, including the right to end a previability pregnancy. So it's all of the above. That's how the court has interpreted the Liberty Clause for over 100 years in cases going back to Meyer, Griswold, Carey, Loving, Lawrence. Yeah, but all of those sort of just come out of Lochner. So we've dropped part of it. So I understand what you're saying. But what I'm trying to focus on is to lower the level of generality or at least be a little bit more specific. In the old days, we used to say it was a right to privacy that the court found in the substantive due process clause or in substantive due process. And I'm trying to get you to tell me what are we relying on now. Is it privacy? Is it autonomy? What is it? I think it continues to be liberty and the right exists whatever level of generality the court applies. There was a tradition under the common law for centuries of women being able to end their pregnancies. But in addition, when it comes to decisions related to family, marriage, and childbearing, the court has done the analysis at a higher level of generality. And that makes sense because otherwise the Constitution would reinforce the historical discrimination against women. Thank you. Justice Breyer? Justice Alito? Well, you just mentioned the common law. So let me ask you a couple of questions about history. Did any state constitutional provision recognize that abortion was a right, liberty, or immunity in 1868 when the 14th Amendment was adopted? No, Your Honor, but it had been allowed under the common law for many years. Does any judicial decision at that time or shortly or immediately after 1868 recognize that abortion was a right, liberty, or immunity? There were state high court decisions shortly before then, Your Honor, talking about the ability of women to end a pregnancy before quickening. What's your best case? For the right to end a pregnancy, Your Honor? Allowing a state to take control of a woman's body and force her to undergo the physical demands, risks, and life-altering consequences of pregnancy is a fundamental deprivation of her liberty. And once the court recognizes that that liberty interest deserves heightened protection, it does need to draw a workable line, and viability is a line that logically balances the interest at stake. The brief for the American Historical Association says that abortion was not legal before quickening in 26 out of 37 states at the time when the 14th Amendment was adopted. Is that correct? That is correct, because some of the states had started to discard the common law at that point because of a discriminatory view that a woman's proper role was as a wife and mother, a view that the Constitution now rejects, and that's why it's appropriate to do the historical analysis at a higher level of generality. In the face of that, can it be said that the right to abortion is deeply rooted in the history and traditions of the American people? Yes, it can, Your Honor. Again, at the founding, women were able to end their pregnancy under the common law, and in fact, this court in Glucksburg specifically discussed Casey as a decision based on history and tradition, and at note 19 specifically called out and relied on Roe's conclusion that at the time of the founding and well into the 1800s, women had the ability to end a pregnancy. What was the principal source that the court relied on in Roe for its historical analysis? Who was the author of that article? I apologize, Your Honor, I don't remember the author. I know that the court spent many pages of the opinion doing a historical analysis. There's also a brief on behalf of several key American historian associations that go through that history in detail because there's even more information now that supports Roe's legal conclusion. Thank you. I think the other side would say that the core problem here is that the court has been forced by the position you're taking and by the cases to pick sides on the most contentious social debate in American life, and to do so in a situation where they say that the Constitution is neutral on the question of abortion, the text in history, that the Constitution is neither pro-life nor pro-choice on the question of abortion, and they would say, therefore, it should be left to the people, the states, or to Congress. And I think they also then continue, because the Constitution is neutral, that this court should be scrupulously neutral on the question of abortion, neither pro-choice nor pro-life, but because they say the Constitution doesn't give us the authority, we should leave it to the states and we should be scrupulously neutral on the question. And that they are saying here, I think, that we should return to a position of neutrality on that contentious social issue rather than continuing to pick sides on that issue. So I think that's, at a big picture level, their argument. I want to give you a chance to respond to that. Yes, a few points, if I may, Your Honor. First, of course, those very same arguments were made in Casey, and the court rejected them, saying that the philosophical disagreements can't be resolved in a way that a woman has no choice in the matter. And second, I don't think it would be a neutral position. The Constitution provides a guarantee of liberty. The court has interpreted that liberty to include the ability to make decisions related to childbearing, marriage, and family. Women have an equal right to liberty under the Constitution, Your Honor. And if they're not able to make this decision, if states can take control of women's bodies and force them to endure months of pregnancy and childbirth, then they will never have equal status under the Constitution. And I want to ask a question about stare decisis and to think about how to approach that here, because there have been lots of questions picking up on Justice Barrett's questions and others. And history helps. Think about stare decisis, as I've looked at it, and the history of how the courts applied stare decisis. And when you really dig into it, history tells a somewhat different story, I think, than is sometimes assumed. Think about some of the most important cases, the most consequential cases in this court's history. There's a string of them where the cases overruled precedent. Brown v. Board, outlawed separate but equal. Baker v. Carr, which set the stage for one person, one vote. West Coast Hotel, which recognized the state's authority to regulate business. Miranda v. Arizona, which required police to give warnings about the right to remain silent and to have an attorney present to suspects in criminal custody. Lawrence v. Texas, which said that the state may not prohibit same-sex conduct. Knapp v. Ohio, which held that the exclusionary rule applies to state criminal prosecutions to exclude evidence obtained in violation of the Fourth Amendment. Gideon v. Wainwright, which guaranteed the right to counsel in criminal cases. Obergefell, which recognized the constitutional right to same-sex marriage. In each of those cases, and that's a list, and I could go on, and those are some of the most consequential and important in the court's history, the court overruled precedent. And it turns out, if the court in those cases had listened and they were presented with arguments in those cases, adhere to precedent. In Brown v. Board, adhere to Plessy. On West Coast Hotel, adhere to Atkins and adhere to Lochner. And if the court had done that in those cases, the country would be a much different place. So I assume you agree with most, if not all, the cases I listed there where the court overruled precedent. So the question on stare decisis is why, if, and I know you disagree with what I'm about to say in the if, if we think that the prior precedents are seriously wrong, if that, why then doesn't the history of this court's practice with respect to those cases tell us that the right answer is actually a return to the position of neutrality and not stick with those precedents in the same way that all those other cases didn't? Because the view that a previous precedent is wrong, Your Honor, has never been enough for this court to overrule, and it certainly shouldn't be enough here when there's 50 years of precedent. Instead, the court has required something else, a special justification, and the state doesn't come forward with any special justification. It makes the same exact arguments the court already considered and rejected in its stare decisis analysis in Casey, and in fact there is nothing different. There is no less need today than 30 years ago or 50 years ago for women to be able to make this fundamental decision for themselves about their bodies, lives, and health. Thank you. Justice Barrett? I want to ask you a follow-up question. You know, the Chief was asking about the viability line and if that was the right place, if that's the right line to draw. So let's take it out of the question of stare decisis and imagine that there's a state constitution that's identical to the 14th Amendment's due process clause, and a state Supreme Court has to decide as a matter of state constitutional law what the scope of an abortion right is. And the second trimester ends at 27 weeks, and so that state Supreme Court says, we think that the right exists in an absolute sense that the state cannot take away the right up to 27 weeks, and then after that adopts an undue burden standard. As a matter of first principles, is that line acceptable as a matter of constitutional law? Your Honor, it may be, but I think that the question in this case is whether a line is obviously more principled or obviously more workable than viability because of the stare decisis context. I mean, that's the row framework, basically, the trimester. Why wouldn't that be workable if you pick a line and say the end of the second trimester, 27 weeks. Third trimester, states' interests increase. I don't understand why 27 weeks is less workable than 24. I'm not trying to suggest it is, Your Honor, and what I was trying to suggest is that the viability line is a principled and workable line, so to change it, there would have to be a new line that's obviously more principled and more workable, and the line that the court has drawn actually... But that's stare decisis. I'm asking as a matter of first principles. As a matter of first principles, the viability line makes sense because if the state constitution... As a matter of credential judgment, it's not constitutionally required as a matter of first principles because, in fact, we could decide to be more protective and say 27 weeks, end of the second trimester. You could, Your Honor, but the viability line makes sense given the protection for liberty because it comes from the woman's liberty interest in resisting state control of her body, and once the court recognizes that interest, it does need to draw a line as it does in many other constitutional contexts like the Fourth and Fifth Amendment, and the viability line, as I mentioned, makes sense because it focuses on the fetus's ability to survive separately, which is an appropriate legal line because it's objectively verifiable and doesn't delve into philosophical questions about when life begins. Thank you, counsel. General Prelogar. Mr. Chief Justice, and may it please the court. For a half-century, this court has correctly recognized that the Constitution protects a woman's fundamental right to decide whether to end a pregnancy before viability. That guarantee that the state cannot force a woman to carry a pregnancy to term and give birth has engendered substantial individual and societal reliance. The real-world effects of overruling Roe and Casey would be severe and swift. Nearly half of the states already have or are expected to enact bans on abortion at all stages of pregnancy, many without exceptions for rape or incest. Women who are unable to travel hundreds of miles to gain access to legal abortion will be required to continue with their pregnancies and give birth, with profound effects on their bodies, their health, and the course of their lives. If this court renounces the liberty interest recognized in Roe and reaffirmed in Casey, it would be an unprecedented contraction of individual rights and a stark departure from principles of stare decisis. The court has never revoked a right that is so fundamental to so many Americans and so central to their ability to participate fully and equally in society. The court should not overrule this central component of women's liberty. General, would you specifically state what the right is? Is it specifically abortion? Is it liberty? Is it autonomy? Is it privacy? The right is grounded in the liberty component of the 14th Amendment, Justice Thomas, but I think that it promotes interests in autonomy, bodily integrity, liberty, and equality. And I do think that it is specifically the right to abortion here, the right of a woman to be able to control without the state forcing her to continue a pregnancy, whether to carry that baby to term. I understand we're talking about abortion here. But what is confusing is that if we were talking about the Second Amendment, I know exactly what we're talking about. If we're talking about the Fourth Amendment, I know what we're talking about. Because it's written, it's there. What specifically is the right here that we're talking about? Well, Justice Thomas, I think that the court in those other contexts, with respect to those other amendments, has had to articulate what the text means and the bounds of the constitutional guarantees. And it's done so through a variety of different tests that implement First Amendment rights, Second Amendment rights, Fourth Amendment rights. So I don't think that there is anything unprecedented or anomalous about the right that the court articulated in Roe v. Casey and the way that it implemented that right by defining the scope of the liberty interest by reference to viability and providing that that is the moment when the balance of interest tips and when the state can act to prohibit a woman from getting an abortion based on its interest in protecting the fetal life at that point. So the right specifically is abortion? It's the right of a woman prior to viability to control whether to continue with the pregnancy, yes. Thank you. General, I am interested in Justice Kavanaugh's long litany of cases in which we've overthrown precedent, and we have. Yet, you did call this unprecedented. As I see the structure of the Constitution, the body of it is the relationship of the three branches of government. And then there is the relationship of the federal government to the state. And through our incorporation of the 14th Amendment of the state vis-à-vis the individual, it's the federal government and the state's relationship to individuals. And I see the Bill of Rights, including the 14th Amendment, as basically setting the limits, giving individual freedom to do certain things and stopping the government from intruding in those liberties, in those Bill of Rights, correct? Of all of the decisions that Justice Kavanaugh listed, all of them, virtually except for maybe one, involved us recognizing and overturning state control over issues that we said belonged to individuals. The right in Miranda to be warned was an individual right, correct? That's right, Justice Sotomayor. And I think that that is a key distinction with the list of precedents that Justice Kavanaugh was relying on. I think that there are really two key distinctions. And the first is that in the vast majority of those cases, the court was actually taking the issue away from the people and saying that it had been wrong before not to recognize a right. And I think that matters because it goes straight to reliance interests. Here, the court would be doing the opposite. It would be telling the woman of America that it was wrong, that actually the ability to control their bodies and perhaps the most important decision they can make about whether to bring a child into this world is not part of their protected liberty. And I think that that would come at tremendous cost to the reliance that women have placed on this right and on societal reliance on what this right has meant for further and greater equality. Reliance is a good point, and this may be my fault. I'm talking about pages 854 to 863 in the Casey case, and I've already used up too much time. I can't read those pages out loud. But they do not include the list that Justice Kavanaugh had. They do include two. One is Brown, and the second one is West Coast Hotel versus Parish. And you could add the gay rights cases as a third, which would fit the criteria. But there are complex criteria that she's talking about that link to the position in the rule of law of this court. So all I would say is you have to read them before beginning to say whether they're overruling or not overruling in the sense meant they're calling for special concern. They say in those, maybe I'd mention two. Wait a minute. Of course, Plessy was wrong when decided, but just a minute. Also remember, Plessy said that separate but equal was a badge of inferiority. No, they said it isn't. Well, all you have to do is open your eyes and look at the South, my friend, and you will see whether it was or it wasn't in 1954. And they made a similar point. They said, are you going to sit here in the middle of the Depression and tell me that Lockner, with its other cases and pure, just about pure laissez-faire, that we can run the country that way? I'd mention that because I'd want people to read those 15 pages with care. And that's why I said that. If you had anything to add to my plea to read it, please do. Well, Justice Breyer, I agree completely. I have read those pages and reread them many times, and I think that this is actually another key distinction from the cases that Justice Kavanaugh was referring to. And that is, as I understand those passages in Casey, the court carefully walked through each and every stare decisis factor that this court focuses on. It looked at workability of the viability rule, doctrinal underpinnings, legal and factual developments, and critically reliant interests. And down the line, it found that the case for reaffirming Roe was overwhelming. And in that situation, when every factor that the court consults to determine whether to retain precedent counsels in favor of retaining it, I think Casey properly perceived that a decision to overrule nevertheless, perhaps based on the conclusion that the justices thought the case was wrongly decided in the first instance, would run counter to the ability of stare decisis to function as a cornerstone of the rule of law in this context. Is it your argument that a case can never be overruled simply because it was egregiously wrong? I think that at the very least, the state would have to come forward with some kind of materially changed circumstance or some kind of materially new argument, and Mississippi hasn't done so. Really? So suppose Plessy v. Ferguson was re-argued in 1897, so nothing had changed. Would it not be sufficient to say that was an egregiously wrong decision on the day it was handed down, and now it should be overruled? It certainly was egregiously wrong on the day that it was handed down, Plessy, but what the court said in analyzing Plessy to Brown and Casey was that what had become clear is that the factual premise that underlay the decision, this idea that segregation didn't create a badge of inferiority, had been entirely mistaken. So is it your answer that we needed all the experience from 1896 to 1954 to realize that Plessy was wrongly decided, which answers my question, had it come before the court in 1897, should it have been overruled or not? I think it should have been overruled, but I think that the factual premise was wrong in the moment it was decided, and the court realized that and clarified that when it overruled it. So there are circumstances in which a decision may be overruled, properly overruled, when it must be overruled, simply because it was egregiously wrong at the moment it was decided. Correct. Is that correct? Well, I think every other starry-decided factor likewise would have justified overruling in that interest, that actually it would run counter to any notion of reasonable reliance, that it was not a workable rule, that it had become an outlier in our understanding of fundamental freedom. Well, there was a lot of reliance on Plessy. The South built up a whole society based on the idea of white supremacy. So there was a lot of reliance. It was improper reliance. It was reliance on an egregiously wrong understanding of what equal protection means. But your answer is, I still don't understand, I still don't have your answer clearly. Can a decision be overruled simply because it was erroneously wrong, even if nothing has changed between the time of that decision and the time when the court is called upon to consider whether it should be overruled? Yes or no? Can you give me a yes or no answer on that? This court, no, has never overruled in that situation just based on a conclusion that the decision was wrong. It has always applied the starry-decisive factors and likewise found that they weren't overruling in that instance. And Casey did that. It applied the starry-decisive factors. If starry-decisive is to mean anything, it has to mean that that kind of extensive consideration of all of the same arguments for whether to retain or discard a precedent itself is an additional layer of precedent that needs to be relied on and can form a stable foundation of the rule of law. General, you've talked a number of times about the reliance interests here and I think I'd like you to say a little bit more about that because sometimes when we talk about reliance interests, it's like there's a rule of law and you look at it and you say, oh, somebody will enforce my contract because of this rule and it has a very kind of grounded quality to it. And as Casey talked about the reliance interests here, they're a little bit more airy and I just wanted to get your sense of what are the reliance interests here and how do they cash out on the ground? Well, there are multiple reliance interests here as I think Casey correctly recognized. Casey pointed to the individual reliance of women and their partners who have been able to organize their lives and make important life decisions against the backdrop of having control over this incredibly consequential decision whether to have a child. And people make decisions in reliance on having that kind of reproductive control, decisions about where to live, what relationships to enter into, what investments to make in their jobs and careers. And so I think on a very individual level, there has been profound reliance. And it's certainly the case that not every woman in America has needed to exercise this right or has wanted to, but one in four American women have had an abortion and for those women, the right secured by Roe and Casey has been critical in ensuring that they can control their bodies and control their lives. And then I think there's a second dimension to it that Casey also properly recognized and that's the societal dimension. That's the understanding of our society even though this has been a controversial decision that this is a liberty interest of women. It's the case that not everyone agrees with Roe versus Wade, but just about every person in America knows what this court held. They know how the court has defined this concept of liberty for women and what control they will have in the situation of an unplanned pregnancy. And for the court to reverse course now I think would run counter to that societal reliance and the very concept we have of what equality is guaranteed to women in this country. It is certainly true that there can be some planning by some people about pregnancy. People who are raped don't have a choice, whether it's by an outsider or their own husband. And not everybody can afford contraceptives contrary to your adversary's brief. In fact, 19% of the women in Mississippi are uninsured, so they don't have money to pay for contraceptives. But why their point in their brief was, you know, contraceptives, if you use them, the failure rate is very small, et cetera, et cetera. How can there be real reliance? So could you address that issue? Of course. So first, this is not a new circumstance. Since Roe and Casey, contraceptives existed in 1973 and in 1992, and still the court recognized that unplanned pregnancies would persist and deeply implicate the liberty interest of women. But I think even on the facts, the state is mistaken here. A contraceptive failure rate in this country is at about 10% using the most common methods. That means that women using contraceptives, approximately one in ten will experience an unplanned pregnancy in the first year of use alone. About half the women who have unplanned pregnancies were on contraceptives in the month that that occurred. And so I think the idea that contraceptives could make the need for abortion dissipate is just contrary to the factual reality. You also mentioned, or maybe it was your co-counsel, that life changes for women after 15 weeks. That's exactly right, Justice Sotomayor, and I think that this is responsive as well to the questions that the Chief Justice was asking about, in particular, the impact of enforcing a 15-week bar in this case. The court has always looked at that issue by looking at the people for whom the law is a restriction, not those for whom it's irrelevant. So the question is, why would women need access to abortion after 15 weeks, and what is the effect on them? And there are any number of women who cannot get an abortion earlier. They don't realize that they're pregnant. That's especially true of women who are young or don't have an experience of pregnancy before, or their life circumstances change, as you referred to, Justice Sotomayor. They lose their job or their relationship breaks apart or they have medical complications. Or for many women, they don't have the resources to pay for it earlier. It takes time for them to raise the money or make the appropriate logistical arrangements to be able to take time off work and travel and have child care. And for all those women in this category who need access to abortion after 15 weeks, the fact that other women were able to exercise their constitutional rights does nothing to diminish the impact on their liberty interests in forcing them to continue with that pregnancy. Thank you. General, following up on that, would that argument be true in terms of viability as well? In other words, your discussion of the reliance interests and the ability of women and men to control their lives in reliance on the right to an abortion, the argument would not be as strong, I think you'll have to concede, given what we're talking about, which is not a prohibition. It's a 15-week line. Is that right? You have to hypothesize people who have planned their lives according to a 24-week limit, but not a 15-week limit on abortion, right? Well, I don't think the court has ever analyzed reliance with that kind of parsing. I think here the force of the viability line is that it's clearly demarcated the scope of a woman's protected liberty interest in this context. And the state is not actually asking this court to replace it with a clear 15-week line that would provide some measure of continued protection for this right. They're asking the court to reverse the liberty interest altogether or leave it up in the air. And if that were to happen, then immediately states with six-week bans, eight-week bans, ten-week bans, and so on, would seek to enforce those with no continued guidance of what the scope of the liberty interest is going forward. Well, that may be what they're asking for, but the thing that is at issue before us today is 15 weeks. And I just wonder what the strength of your reliance arguments, which sounded to me like being based on a total prohibition, would be if there isn't a total prohibition. And as far as viability goes, I don't see what that has to do with the question of choice at all. Well, I think as Casey emphasized in reaffirming the viability line, the court justified that as having both a logical and a biological justification that it marks the point in pregnancy when the fetus is capable of meeting the life... Now, that's what John Hart really explained was a complete syllogism. That's the definition of viability. It's not a reason that viability is a good line. Well, it's focused on the idea of fetal separateness, and I think that that is a line that also accords with the history and tradition in this country of abortion regulation. Contrary to the state's arguments here, at the time of the founding and for most of early American history, women had an ability to access abortion in the early stages of pregnancy, and it was only when the fetus was deemed sufficiently separate that states could act to bar that. So I think that the viability line also aligns with history and tradition in that respect. Justice Thomas? You heard my question to counsel earlier about the woman who was convicted of criminal child neglect. What would be your reaction to that as far as her liberty and whether or not the liberty interest that we're talking about extends to her? Well, Justice Thomas, I have to confess that I haven't read the specific case you're referring to, but if I understand the question you were posing, it sounds as though the state is seeking to regulate for a child that's been born that was injured while it was inside the womb. And I think that we are not denying that a state has an interest there. We're not denying that a state has an interest here either. Roe recognized that states have interests that exist from the outset of pregnancy, but with respect to this specific right to abortion, there are also profound liberty interests of the woman on the other side of the scale in not being forced to continue with a pregnancy, not being forced to endure childbirth, and to have a child out in the world. And the state's arguments here seem to ask this court to look only at its interests and to ignore entirely those incredibly weighty interests of the woman on the other side. Thank you. Justice Breyer? Justice Gorsuch, any further? I just want to make sure I understand your response to the Chief Justice. If this court were to reject the viability line, do you see any other intelligible principle that the court could choose? Well, I think that it would be critically important, even if this court were to reject the viability line, to reinforce and reaffirm the fundamental and profound liberty interests at stake here. I'm sorry for interrupting, but that wasn't my question. I understand that point fully by the end of this argument. That is deeply clear to me. I understand your position. I'm just asking a question about whether you think there would be another alternative line that the government would propose. We're not. You've emphasized that if 15 weeks were approved, then we'd have cases about 12 and 10 and 8 and 6. And so my question is, is there a line in there that the government believes would be principled or not? I don't think there's any line that could be more principled than viability. You know, I think the factors the court would have to think about are what is most consistent with precedent, what would be clear and workable, and what would preserve the essential components of the liberty interest. And viability checks all of those boxes and has the advantage as well as being a rule of law for 50 years. Thank you. That's helpful, counsel. Appreciate it. Justice Kavanaugh? You make a very forceful argument and identify critically important interests that are at stake in this issue. No doubt about that. The other side says, though, that there are two interests at stake, that there's also the interest in fetal life at stake as well. And in your brief, you say that the existing framework accommodates, that's your word, both the interest of the pregnant woman and the interest of the fetus. And the problem, I think the other side would say, and the reason this issue is hard, is that you can't accommodate both interests. You have to pick. That's the fundamental problem. And one interest has to prevail over the other at any given point in time. And that's why this is so challenging, I think. And the question then becomes, what does the Constitution say about that? And I just want to get your reaction to what the other side's theme is, and I've mentioned it in my prior questions. When you have those two interests at stake, and both are important, as you acknowledge, why not, why should this court be the arbiter rather than Congress, the state legislatures, state Supreme Courts, the people being able to resolve this? And there will be different answers in Mississippi and New York, different answers in Alabama than California, because there are two different interests at stake, and the people in those states might value those interests somewhat differently. Why is that not the right answer? Justice Kavanaugh, it's not the right answer because the court correctly recognized that this is a fundamental right of women. And the nature of fundamental rights is that it's not left up to state legislatures to decide whether to honor them or not. And it's true different rules would prevail throughout the country if this court were to overrule Roe and Casey, but what that would mean is that women in those states who are refusing to honor their rights and who are forcing them to continue to use their bodies to sustain a pregnancy and then to bring a child into the world will have no recourse other than to travel if they're able to afford it, or to attempt abortion outside the confines of the medical system, or to have a child even though that was not the best choice for them and their family. Thank you. Justice Barrett? I have a follow-up to Justice Kagan's question about reliance. I'm just trying to nail down, and I asked Ms. Rickleman this question too, but I'm not sure that I fully understand the government's position or Ms. Rickleman's position. So on pages 18 and 19 of your brief, you talk about reliance interests and you quote some of the language from Casey about a woman's ability to participate in the social and economic life of the nation. And I mentioned the safe haven laws to Ms. Rickleman, and it seems to me I fully understand the reliance interests. They're the airy ones Justice Kagan was referring to, and then there are the more specific ones about a woman's access to abortion as a backup form of birth control in the event that contraception fails so that she need not bear the burdens of pregnancy. But what do you have to say to Petitioner's argument that those reliance interests do not include the reliance interests of parenting and bringing a child into the world when maybe that's not the best thing for her family or her career? I think the state is wrong about that, and I think where the analysis goes wrong in reliance on those safe haven laws is overlooking the consequences of forcing a woman upon her, the choice of having to decide whether to give a child up for adoption. That itself is its own monumental decision for her. And so I think that there's nothing new about the safe haven laws, or at least nothing new about the availability of adoption as an alternative. Roe and Casey already took account of that fact, and I think that there are certainly, of course, all of the bodily integrity interests that we refer to, but also the autonomy interests retained in force as well. Okay, so it's the reliance interests and the right to be able to choose to terminate the pregnancy rather than having to terminate the parental rights. I think that that is part of it, yes, and I think for many women that is an incredibly difficult choice, but it's one that this court for 50 years has recognized must be left up to them based on their beliefs and their conscience and their determination about what is best for the course of their lives. Thank you, General. Thank you, General. Rebuttal, General Stewart. Thank you, Mr. Chief Justice. I'd like to do my best to make three points. First, picking up where you just left off, Justice Barrett, on safe haven laws, the respondents in this case, I believe as Your Honor pointed out, have emphasized parenting burdens being a lead or the lead reason that women seek abortions. I would emphasize safe haven laws, as best I've been able to find, first came into existence in 1999 in Texas. They're now ubiquitous, and you're correct, Justice Barrett, that they relieve that huge burden. I would also add that as to burdens during pregnancy, I would emphasize that contraception is more accessible and affordable and available than it was at the time of Roe or Casey. It serves the same goal of allowing women to decide if, when, and how many children to have. And I would also note, just frankly, the lowest-cost abortion at Jackson Women's Health is $600 for the abortion. Additional costs and further fees, according to my friends, the respondents, and their amici, there are also additional costs related to travel, taking time off of work, accommodations, all of those sorts of things. Whether somebody is uninsured or not, the costs of contraception are consistently significantly less than those. Number two, I think, Justice Kavanaugh, you had it exactly right when you used the term scrupulously neutral. I think that's a very good description of what we're asking for here. I think it's the problem and the value that has evaded the court and will continue to evade this court under Roe and Casey, but that is exactly right. This is a hard issue. It involves, and I would emphasize, Your Honor, that, as you said, there are interests here on both sides. There are interests for everyone involved. This is unique for the woman. It's unique for the unborn child, too, whose life is at stake in all of these decisions. It's unique for us as a society in how we decide, if the states get to legislate on this issue, how to decide and how to weigh these tremendously momentous issues. In closing, I would say that in his dissent in Plessy v. Ferguson, Justice Harlan emphasized that there is no caste system here. The humblest in our country is the peer of the most powerful. Our Constitution neither knows nor tolerates distinctions on the basis of race. It took 58 years for this court to recognize the truth of those realities in a decision, and that was the greatest decision that this court ever reached. We're running on 50 years of Roe. It is an egregiously wrong decision that has inflicted tremendous damage on our country and will continue to do so and take innumerable human lives unless and until this court overrules it. We ask the court to do so in this case and uphold the state's law. Thank you, Your Honor. Thank you, General, Counsel. The case is submitted.